# Justice officials fear nation's biggest wiretap operation may not be legal

Brad Heath and Brett Kelman, USA TODAY    5:40 p.m. EST November 11, 2015



(Photo: Virginia State Police)

RIVERSIDE, Calif. — Federal drug agents have built a massive wiretapping operation in the Los Angeles suburbs, secretly intercepting tens of thousands of Americans' phone calls and text messages to monitor drug traffickers across the United States despite objections from Justice Department lawyers who fear the practice may not be legal.

Nearly all of that surveillance was authorized by a single state court judge in Riverside County, who last year signed off on almost five times as many wiretaps as any other judge in the United States. The judge's orders allowed investigators — usually from the U.S. Drug Enforcement Administration — to intercept more than 2 million conversations involving 44,000 people, federal court records show.

The eavesdropping is aimed at dismantling the drug rings that have turned Los Angeles' eastern suburbs into what the DEA says is the nation's busiest shipping corridor (/story/news/crime_courts/2015/11/11/riverside-county-drug-trafficking/75232146/) for heroin and methamphetamine. Riverside wiretaps are supposed to be tied to crime within the county, but investigators have relied on them to make arrests and seize shipments of cash and drugs as far away as New York and Virginia, sometimes concealing the surveillance in the process.

The surveillance has raised concerns among Justice Department lawyers in Los Angeles, who have mostly refused to use the results in federal court because they have concluded the state court's eavesdropping orders are unlikely to withstand a legal challenge, current and former Justice officials said.

"It was made very clear to the agents that if you're going to go the state route, then best wishes, good luck and all that, but that case isn't coming to federal court," a former Justice Department lawyer said. The lawyer and other officials described the situation on the condition of anonymity because they were not authorized to discuss the department's internal deliberations.

Federal agents often prefer to seek permission to tap phones from state courts, instead of federal courts, because the process is generally faster and less demanding than seeking approval through the Justice Department. In addition, California law allows them to better conceal the identities of confidential informants they rely on to help investigate drug rings. Over the past decade, drug agents have more than tripled their use of wiretaps (/story/news/2015/06/02/dea-wiretap-surveillance-tripled-in-state-courts/28330503/), mostly by using state court orders.

 DESERT SUN

How Riverside County became America's drug pipeline

(http://www.desertsun.com/story/news/crime_courts/2015/11/11/riverside-county-drug-trafficking/75232146/)

Wiretaps — which allow the police to secretly monitor Americans' communications — are among the most intrusive types of searches the police can conduct, and federal law imposes strict limits on when and how they can be used. The law requires that police use wiretaps only after they have run out of other tools to build a case.

In Riverside, the authorities' use of that last-ditch tool quadrupled over the past four years. Last year alone, Riverside County prosecutors and a local judge approved 624 wiretaps, far more than any other jurisdiction in the United States, according to records compiled by the federal court system. Nearly all were tied to drug investigations.



EXHIBIT 1

http://www.usatoday.com/story/news/2015/11/11/dea-wiretap-operation-riverside-california/75484076/    11/19/2015

## AMERICA'S WIRETAP CAPITAL

A county court in Riverside, Calif. authorized far more police eavesdropping than any other court in the USA. Much of it was sought by federal drug agents.

Shown below are the 30 jurisdictions with the most wiretaps in the USA. Hover or tap for details

Source: Administrative Office of the U.S. Courts
Credit: Brad Heath, Mitchell Thorson, USA TODAY

"Those numbers — the totals, and just the size of some of those wiretaps — are huge red flags for us," said Dave Maass, an investigative researcher for the Electronic Frontier Foundation. "When there's this amount of secrecy it starts to raise serious concerns about accountability for electronic interceptions."

Because wiretap orders are sealed, there is no way to know precisely how many of them were sought by the DEA and the local officers it deputized to work on a drug task force. Some of the taps were sought by local police officers and officers in neighboring counties. Prosecutors acknowledged, however, that the drug agency plays a leading role in the wiretapping. The county's former district attorney, Paul Zellerbach, who presided over the rapid rise in wiretapping there before he left office in January, said the drug agency was "a significant player."

Riverside County's new district attorney, Mike Hestrin, said he found out about the county's wiretap numbers not long after taking office after other prosecutors approached him to suggest he look into the matter. He was concerned by what he found.

Hestrin said in an interview that he made a "series of reforms" to how wiretaps are handled, which he said will lead to fewer taps in the future. He said he personally evaluates new wiretap requests and insists that each one now must "have a strong investigative nexus" to the county. Asked if that had been the case in previous years, Hestrin replied: "You're going to have to extrapolate that."

Hestrin said prosecutors "follow the law to the letter" when seeking wiretaps, but he would not discuss the details. "This is an area of our law, an area of our law enforcement, where we can't be totally transparent, in the same way that the federal government can't be totally transparent about the massive intelligence operations they run," he said.



Riverside County District Attorney Mike Hestrin said he made a "series of reforms" to how county prosecutors handle wiretaps after he took office in January. (Photo: Jay Calderon/The Desert Sun)

DEA officials said it should not come as a surprise that so much of their surveillance work happens in the area around Riverside — a vast expanse of suburbs and desert east of Los Angeles, crisscrossed by freeways that have become key shipping routes for drugs moving from Mexico to the United States and for cash making the return journey.

"There are organizations here and we're working these organizations and we're trying to stay abreast of the technology and all the different ways these organizations are operating," said Stephen Azzam, the associate special agent in charge of DEA's Los Angeles division.

On paper, agents' choice of state court over federal should not matter: Federal law sets a minimum standard for police to obtain a wiretap, even when they are seeking one from a state-court judge. And California courts have repeatedly said the state's wiretaps are sufficient.

But current and former Justice Department officials said prosecutors in Los Angeles repeatedly told the drug agency that they would not accept cases based on state-court wiretaps – and those from Riverside County in particular – because they believed the applications being approved by state judges fell short of what the federal law requires. Prosecutors were particularly concerned that the DEA was seeking state-court wiretap orders without adequately showing that it had first tried other, less intrusive, investigative techniques.

"They'd want to bring these cases into the U.S. Attorney's Office, and the feds would tell them no (expletive) way," a former Justice Department official said.

The result was that even seemingly significant drug cases stayed out of federal court.

In December, for example, court records show (https://www.documentcloud.org/documents/2511318-76k-complaint.html) DEA agents and local detectives in South Gate, Calif., near Los Angeles, used a state-court wiretap to target a man named Omar Salazar, who the DEA suspected was tied to a Mexican drug trafficking group. Between searches of Salazar's car and his house, officers seized $76,869.94, a gun and a cache of illegal drugs, including 36 pounds of methamphetamine and 5 pounds of heroin. Investigators found some of the drugs in a safe in Salazar's garage, along with a box of ammunition and probation paperwork from one of his previous arrests.

That should have been enough to build a significant federal case with a long mandatory prison sentence, but that was not what happened. Court records show the Justice Department prosecuted the $76,869.94 in a civil asset seizure case (https://www.documentcloud.org/documents/2511318-76k-complaint.html). But it did not prosecute Salazar. Instead, Salazar was booked into jail and released the same day; his lawyer, John Passanante, said he has not been charged as a result of the search. Neither the DEA nor prosecutors would explain why.

PROLIFIC WIRETAPPING

Perhaps the only outward sign that Riverside has become America's most wiretapped place can be found on a deserted floor of the city's courthouse. On a recent Friday afternoon, a handful of officers in scruffy jeans and baseball caps waited there with sealed manila envelopes in their hands. After a few minutes, they disappeared inside Judge Helios Hernandez's locked courtroom for hearings that are closed to the public.

No judge in the United States has been so prolific in authorizing eavesdropping.



Riverside County Superior Court Judge Helios Hernandez approved nearly five times as many wiretaps last year as any other judge in the United States. *(Photo: Brett Kelman, The Desert Sun)*

Records compiled by the federal courts' administrative office show Hernandez authorized 624 wiretaps that ended last year, and another 339 that ended the year before. Hernandez approved three times more taps than all of the federal judges in California combined last year, and once received more wiretap applications in a day, 17, than most courts do in a year. (The court office counts wires based on when they end, rather than when they begin, to avoid revealing ongoing investigations.) The next-closest court was in Las Vegas, where judges approved 177 wiretaps that ended last year.

California law generally requires that each county court appoint one judge to handle wiretaps. For the past three years, that job fell to Hernandez, who was Riverside's chief narcotics prosecutor before he became a judge. The records do not indicate how many wiretaps, if any, Hernandez turned down.

- Hernandez declined to comment through a spokesman.

Riverside County's presiding judge, Harold Hopp, said judges do not decide how many eavesdropping applications are submitted to them; "they have to consider each one on its merits."

The county's wiretap numbers are so high that even investigators who helped supervise eavesdropping there were taken aback. "This can't be right," said Anthony Valente, who, until 2012, commanded the Inland Crackdown Allied Task Force, which uses wiretaps to investigate drug trafficking and gangs in Southern California.

Nearly all of Riverside's wiretaps – about 96% – were related to drug investigations.

Federal records show the taps that ended in 2014 cost more than $18 million. The records do not indicate who paid for them.

The figures are based on reports that judges and prosecutors are required to submit each year to the federal courts' administrative office. The reports include the number of wiretaps judges authorize, and the number of communications – including telephone calls, text messages and other electronic conversations – that investigators intercepted.

Those reports show the overwhelming majority of the more than 2 million communications investigators intercepted last year as a result of Riverside wiretaps had nothing to do with crime. Police are not supposed to record conversations that are not relevant to their investigations.



DEA officials said that the agency conducts its wiretaps wherever their investigations lead them. Its Riverside field office, which covers Riverside and neighboring San Bernardino counties, was responsible for a large share of the agency's methamphetamine and heroin seizures last year; therefore, it's only natural that investigators would focus there. "We don't pick a jurisdiction. We take the enforcement action where it's warranted and where we can do it effectively," DEA spokesman Timothy Massino said.

Nonetheless, Hernandez approved 20 times as many wiretaps as his counterparts in San Bernardino County. DEA officials said they could not explain that difference.

Zellerbach said Riverside's wiretaps multiplied during his tenure because prosecutors and the county's court became more "efficient and effective" in handling surveillance applications and word spread throughout the law enforcement community, bringing still more applications. Eventually, Zellerbach said, he learned the county was among the nation's wiretap leaders. "I thought we were doing a hell of a job," he said.



Former Riverside County District Attorney Paul Zellerbach presided over a rapid increase in wiretaps. *(Photo: Richard Lui, The Desert Sun)*

Zellerbach said the taps yielded significant arrests and seizures. And they paid other dividends. "We liked it because in these difficult economic times, my budget was being cut, and that was a way to somewhat supplement funding for my office," he said in an interview. Prosecutors would not say how much money they received.

Zellerbach said the operation grew under the leadership of an aggressive new lawyer, Deena Bennett, who still heads the wiretap unit today.

Bennett, a one-time contestant on the reality show *Survivor*, rebuffed attempts to contact her, telling a reporter that "the fact that you have my cellphone number is really harassment, and I'm going to report it."

## WIDESPREAD ARRESTS AND SEIZURES

Investigators have used (https://www.documentcloud.org/documents/2511325-california-electronic-interceptions-report-2014.html#document/p22/a260422) wiretaps in Riverside to seize hundreds of pounds of drugs and millions of dollars in cash. The taps have helped agents pinpoint smuggling tunnels dug beneath the Mexican border and map the inner workings of South American trafficking groups.

But if the taps also produce arrests, they are difficult to find.

Prosecutors seldom make use of state-court wiretaps in the federal courts around Los Angeles. And defense lawyers in Riverside said they only rarely encounter cases with disclosed wiretaps in state court. The county's public defenders handle 40,000 criminal cases a year; no more than five involve disclosed wiretaps, said Steve Harmon, the head of that office.

Instead, court records and interviews with DEA officials and prosecutors show the drug agency has used the fruits of its Riverside wiretaps to help stop and seize shipments of drugs and cash elsewhere in the United States. In some of those cases, agents used wiretaps to identify drug couriers, then tipped off other investigators, who were told to find their own independent evidence to conduct a search. That practice, known within the agency as "parallel construction," is now the subject of an investigation by the Justice Department's inspector general.

"That approach ends up insulating dubious police practices from any kind of judicial review. That's what so pernicious about it," American Civil Liberties union lawyer Nathan Wessler said.

Riverside's District Attorney's Office reported approximately one arrest for every three wiretaps that concluded last year, among the lowest rates of any jurisdiction that conducted more than a handful of taps. That's a sign, Hestrin acknowledged, that many of the wiretaps may be leading to prosecutions in other jurisdictions.



Police seized heroin and cocaine from this truck after it was stopped in rural Virginia in 2013. The stop was based on a wiretap from Riverside, Calif. *(Photo: Unites States District Court)*

One surfaced last year after a state trooper stopped a tractor trailer on a remote stretch of interstate highway outside Harrisonburg, Va., ostensibly because some of the tiny LED bulbs around its cab had burned out. The trooper, Keith Miller, summoned a drug-sniffing dog, and within minutes, officers had pulled 32 kilograms of heroin and cocaine from compartments in the truck's cab. Federal prosecutors indicted the driver, George Covarrubaiz, on drug possession charges.

Miller testified during a court hearing – later described by a prosecutor as "a high-wire act" – that he had been tipped off by the DEA that the truck might be carrying drugs, but that the burnt-out lights were his "sole reason" for stopping the truck. The problem for prosecutors was that driving without those lights is not illegal in Virginia. The judge hearing the case warned that he was inclined to bar prosecutors from using the seized drugs as evidence because, if driving without the lights was legal, Miller had no valid reason to stop the truck.



Officers found 32 kilograms of heroin and cocaine in a truck George Covarrubaiz had been driving through rural Virginia. The search was captured on cameras mounted in one of the officers' car. *(Photo: Virginia State Police)*

So seven months after Covarrubaiz was stopped and sent to jail, the Justice Department returned to court and acknowledged there was more to its investigation (https://www.documentcloud.org/documents/2510859-ghc-52-wiretap-disclosure.html). Covarrubaiz, a government lawyer wrote, had been picked up in a "wiretap investigation of a significant California-based drug trafficking organization." Investigators had been monitoring his calls using a tap approved by Hernandez in Riverside County, and agents from the DEA's secretive Special Operations Division had been tracking his truck across the United States. During a 4 a.m. meeting at a nearby hotel, the agents directed Miller to find a reason to stop the truck and search it.

The agents' reports referred to the episode merely as a traffic stop because "that way they didn't have to provide the information for the directed stop later," agent Gregg Mervis later testified (https://www.documentcloud.org/documents/2511321-ghc-wiretap-testiomony.html#document/p41/a260419).

Justice Department lawyers later said they had intended to reveal the wire all along but had not done so sooner because police had not yet locked up some of the investigation's key targets. In particular, Assistant U.S. Attorney Grayson Hoffman pointed to the truck's owner, Everardo Amador Sr., who he described as "a grave threat to the safety and well-being of the people of the United States."

That's hardly how California police treated Amador, though. Agents arrested him last (https://www.documentcloud.org/documents/2511326-01-complaint-filed-imaged.html) year on charges that he had illegally possessed drug money – a far less serious charge than the federal narcotics case his driver faced in Virginia. A judge freed him the next day on $5,000 bail, at the prosecutor's request.

Amador's lawyer, Niicolas Estrada, called the Justice Department's

Case 3:15-cr-00099-DJH Document 27-3 Filed 02/16/16 Page 7 of 7 PageID #: 436



Everardo Amador Sr. right, leaves court in Riverside, Calif. on Oct. 21, 2015. The Justice Department said it could not reveal a state-court wiretap because Amador posed a "grave threat," but when he was arrested, he was immediately freed on bail. *(Photo: Brett Kelman, The Desert Sun)*

characterization "an exaggeration."

Covarrubaiz's lawyer, Randy Cargill, accused the Justice Department in a court filing (https://www.documentcloud.org/documents/2510856-ghc-78-reply.html) of an "extraordinary strategy of doling out truth as it sees fit."

In the end, U.S. District Court Judge Michael Urbanski declared himself (https://www.documentcloud.org/documents/2510895-ghc-114-transcript.html#document/p3/a260418) "singularly unhappy with the way the government has conducted this case." And in March, the Justice Department abandoned it altogether, dismissing the charges (https://www.documentcloud.org/documents/2511320-ghc-126-motion-to-dismiss.html) against Covarrubaiz. Assistant U.S. Attorney Heather Carlton told Urbanski (https://www.documentcloud.org/documents/2510853-ghc-transcript.html#document/p2/a260420) that prosecutors had "re-evaluated the evidence" and concluded that "it would be best to terminate the investigation."

The rest of her explanation is sealed (https://www.documentcloud.org/documents/2510853-ghc-transcript.html#document/p6/a260421).

*Kelman also reports for The (Palm Springs, Calif.) Desert Sun. Contributing: Mark Hannan in McLean, Va.*

Follow Brad Heath on Twitter at @bradheath (http://twitter.com/bradheath), and Brett Kelman at @TDSbrettkelman (https://twitter.com/TDSbrettkelman).

Read or Share this story: http://usat.ly/1NL0unL