UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF


v.                                    CRIMINAL ACTION NO. 3:15-CR-99-DJH


EDDIE WHITFILL                                                DEFENDANT

## MOTION TO SUPPRESS EVIDENCE

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Comes the Defendant, **EDDIE WHITFILL** (hereinafter "Whitfill"), by counsel, pursuant to the Fourth, Fifth and Sixth Amendments to the United States Constitution, and respectfully moves the Court to suppress all evidence seized, directly or indirectly, pursuant to a warrant at 5770 North Highway 259, Hardinsburg, Kentucky 40143,  dated March 19, 2015, authorizing the search of said premises, and the seizure of certain items located therein. As grounds for this motion, Whitfill states as follows:

1.      The affidavit in support of the warrant failed to establish probable cause that a crime was committed and consequently, failed to meet the requirements of the Fourth Amendment.

2.      The affiant failed to provide the magistrate who issued the warrant with sufficient evidence to establish a nexus between the items sought, and the place to be searched, and was therefore in violation of the Fourth Amendment.

3.      Any information in the affidavit connecting Whitfill to the alleged crimes had become stale.

4.      Information contained in the affidavit regarding Whitfill was obtained as a result of an unlawful wiretap issued by a state court in Riverside, California.

5.      During the unlawful search at Whitfill's home, law enforcement officers conducted an unlawful search and interrogation of Whitfill.

## INTRODUCTION

Whitfill, files this motion to suppress all evidence seized by Bullitt County detectives pursuant to a warrant issued on the same day. The application for this warrant was supported by an affidavit of Detective Timothy Murphy, an officer with the Bullitt County Sheriff's Office. The affidavit states that the purpose of the search was to locate records reflective of drug activity, and evidence of the concealment of proceeds from drug sales.  Much of the evidence contained in the affidavit failed to give a date on when the information was learned and, therefore, was stale.  In additional, evidence contained in the affidavit was obtained from an unlawful wiretap issued by a state court in Riverside, California.  Property was searched and seized outside the scope of the warrant.  During the search, officers at Whitfill's home conducted an unlawful search and interrogation of Whitfill.

## ARGUMENT

A.      The Affidavit For Search Warrant Failed To Establish Probable Cause That A Crime Involving Narcotics Was Committed.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  An affidavit establishes probable cause when the issuing judge finds that "given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *U.S. v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  The affidavit must contain "adequate supporting facts about the underlying circumstances, either from the direct knowledge of the affiant or from reliable

hearsay information" to properly determine whether probable cause exists sufficient to issue a warrant. *U.S. v. West*, 520 F.3d 604, 609 (6th Cir. 2008).

The affidavit contains only vague references to any drug related activities, and lacks specific information indicating that Whitfill was engaged in drug trafficking activities at or near the time the warrant was issued. The affidavit refers to a conversation where the co-defendant, Christopher Mattingly, told Whitfill that "he needed all his Chicken Feed delivered to him." The affiant stated that the detectives believed this to be code for money, despite the affidavit stating he was aware that these men were in the business of raising chickens. It was then stated in the affidavit that the detectives believed the term "chicken water" to be a reference to narcotics but only states that this term had been utilized in "previous conversations" without specifically mentioning any of these conversations. Allegations of drug trafficking due to the aforementioned conversation, as well as, any preceding and subsequent conversations between the co-defendant and Whitfill, were based on pure speculation and suspicion, and failed to establish probable cause.

B.    The Applicant Failed To Provide The  Issuing Magistrate With Sufficient Evidence Establishing A Nexus Between The Items Sought And The Place To Be Searched.

To establish probable cause, there needs to be a "nexus between the place to be searched and the evidence sought." *U.S. v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir.1998)). The search is justified when the circumstances indicate why evidence of illegal activity will be found at the place to be searched. *Id. See Van Shutters*, 163 F.3d at 336–38 (no probable cause where warrant affidavit failed to state a nexus between the premises and the criminal activity); *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) (no probable cause for warrant where affidavit lacked an "evidentiary nexus ... between the [place to be searched] and the

criminal activity"). To establish a nexus, the affidavit has to show a reasonable cause to believe that the specific items that are to be seized are "located on the property to which entry is sought." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006). It is not enough for the affidavit to simply state that "the owner of [the] property is suspected of [a] crime." *U.S. v. Wilhere*, 89 F. Supp. 3d 915, 918-19 (E.D. Ky. 2015) (quoting *McPhearson*, 469 F.3d 518, 524).

Here, the affidavit did not provide a substantial basis for the issuing judge to conclude that probable cause existed to search Whitfill's property because it failed to set forth sufficient facts that incriminating evidence would be found. The specific information described in the affidavit is not related to the property searched. The affidavit does not refer to Whitfill's property until the last paragraph where it states "narcotics transactions have occurred at this property as well as at Eddie Whitfill's property."  The reference to "this property" refers to the farm belonging to the co-defendant located at 681 Hickerson Cemetery Lane in Hardinsburg, Kentucky, not Whitfill's property. The only information regarding Whitfill's  property in relation to narcotics crimes came from a Confidential Informant who claimed to be in the presence of Whitfill at both properties where drugs and drug proceeds were present. Significantly, no dates or details are given and this accusation is uncorroborated.

C.     Even If Probable Cause Existed, Any Information In The Affidavit Related To Drug Trafficking Had Become Stale.

The question of staleness depends on the "inherent nature of the crime." *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir.1988). The purpose of a staleness test "is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *Id*. The following variables are often used to determine staleness: "the character

of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?)." *U.S. v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (quoting *Andresen v. State*, 24 Md.App. 128, 331 A.2d 78, 106 (1975)). The specific circumstances of the case are also used to determine whether information in an affidavit is stale and, consequently, probable cause has expired. *Id*. "The passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." *U.S. v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). The Sixth Circuit held that the sale of drugs out of a home is not inherently ongoing. *Id.* The affidavit in *Hython* was stale because it stated that officers had observed a controlled buy at the suspect's home; however, it did not state when this controlled buy occurred. *Id*. at 486–87.

Like *Hython*, the alleged crime at issue in this case is not inherently ongoing. Also, like *Hython*, no dates are given as to when these alleged drug trafficking crimes occurred at Whitfill's residence. The affidavit simply states "narcotics transactions have occurred" at Whitfill's property and "there is no information indicating this activity has stopped." Not only are there no dates listed as to when these narcotics crimes were supposed to have occurred, there is also no date listed in the affidavit as to when the informant gave the detectives information regarding narcotics crimes and the Defendant.

D.     The Affidavit Contained Evidence Obtained From An Unlawful Wiretap.

Whitfill has joined in motions filed by his co-defendants, namely, Christopher Mattingly and Ronald Shewmaker, to suppress evidence obtained from an unlawful wiretap issued by a state court judge in Riverside, California.  The issues raised regarding the lawfullness of the state court wiretap have been thoroughly briefed by the Government and

Mattingly and Shewmaker, and the Court has heard oral arguments.  Whitfill adopts the arguments raised by Mattingly and Shewmaker for purposes of this motion.

The Government claimed in a response to Whitfill's motions to join the motions filed by his co-defendants Mattingly and Shewmaker, that he lacked standing to suppress since he was not a party to the oral communication the Government intended to introduce at trial. However, the search warrant affidavit contains numerous references to conversations obtained from the unlawful wiretap, including conversations involving Whitfill.  Whitfill points the Court to the following:

> Page 7, paragraph 1: "Whitfill's phone number is recurring during conversations.;"

> Page 7, paragraph 2: " Emilo Baca in Riverside is receiving the calls from Whitfill to Mattingly.  Mattingly called Whitfill and told him that he needed all of his chicken feed delivered to him.;"

> Page 7, paragraph 6: "On 03/17/2015, detectives received multiple calls related to this pick up from Riverside, California.  The first call stated that the third parties would be arriving at the farm in the evening of 03/18/2015.  Eddie Whitfill told Christopher Mattingly they would stay the night and they would load the 'Van' on 03/19/2015.  Christopher Mattingly told Eddie Whitfill to take the seats out of the 'van' because that was their money.;"

> Page 7, paragraph 7: "On 03/18/2015, detectives received several calls from Riverside, California relate to the pick up on 03/19/2015.   During one call Eddie Whitfill told Christopher Mattingly that the drivers (4) had been delayed. They had run into two checkpoints (presumably in Mexico) and the officers took $3,000 from one check point and $5,000 from a second checkpoint.  The delay would cost time also. Eddie (Whitfill) told Christopher Mattingly that he had given the third party his address.  The third party put the address in his GPS and found out the (sic) he would be arriving at Eddie's  (Whitfill) location at 0830 on 03/19/2015.;"

> Page 7, paragraph 8: "During another conversation Eddie [Whitfill] asked Christopher Mattingly how much to give the

third party.  Christopher Mattingly told Eddie [Whitfill] to give the man $30,000 and tell him that was all they had.;"

and

Page 7, paragraph 10: "Detectives have seen on multiple occasions, and listened to multiple conversations that we know that Eddie Whitfill has access to all areas of Mattingly's farm and visits it daily to feed Mattingly's animals."

Accordingly, Whitfill has standing to challenge the unlawful wiretap, and, to suppress all evidence obtained from the unlawful wiretap, including the conversations contained in the affidavit for the search warrant for Whitfill's home, as well as all evidence obtained, directly or indirectly, therefrom.

E.       Officers Conducted An Unlawful Search, Seizure And Interrogation Of Whitfill.

During the search at Whitfill's home, law enforcement officers conducted an unlawful search and seizure of Whitfill's person.  The search was without consent and/or probable cause.  Further, officers unlawfully interrogated Whitfill during the search.  The interrogation was in violation of Whitfill's Miranda Rights, and without consent.  Whitfill was unlawfully detained and arrested although no arrest warrant had been issued.  Further, personal property of Whitfill and others, including cell phones, was seized outside the scope of the warrant.  Accordingly, all evidence obtained, directly or indirectly, as a result of the unlawful search and seizure of Whitfill's person, property and his unlawful interrogation should be suppressed.

**CONCLUSION**

Based on the foregoing arguments and authorities, the Court should suppress all the evidence seized, directly or indirectly, pursuant to the warrant.

Respectfully Submitted,


/s/ Patrick J. Renn
Counsel for Defendant
600 West Main Street, Suite 100
Louisville, Kentucky 40202
(502) 540-5700
(502) 568-3600 (fax)
prenn@600westmain.com



**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2016, I electronically filed with the Clerk of the Court by using the CM/ECF system, which will serve notice of electronic filing to all attorneys of record.


/s/ Patrick J. Renn
Counsel for Defendant
600 West Main Street, Suite 100
Louisville, Kentucky 40202
(502) 540-5700
(502) 568-3600 (fax)
prenn@600westmain.com