UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                PLAINTIFF

v.                                        CRIMINAL ACTION NO. 3:15CR-99-DJH

EDDIE WHITFILL                                                          DEFENDANT

RESPONSE TO MOTION TO SUPPRESS EVIDENCE
*(Filed Electronically)*

Comes now the United States of America, by counsel, and responds to the motion by defendant Eddie Whitfill to suppress evidence seized on 19 March 2016 during the execution of a state search warrant for his premises located at 5770 North Highway 259, Hardinsburg, Kentucky.  Whitfill claims (1) that the affidavit failed to establish probable cause that a crime had been committed, (2) that the affidavit presented insufficient evidence for the issuing judge to find a nexus between the place to be searched and the items sought to be seized, (3) that the information in the affidavit connecting Whitfill to the crime was stale, (4) that the information in the affidavit connecting Whitfill to the crime came from unlawful wiretaps, and (5) that during the execution of the search warrant Whitfill was unlawfully seized and searched, and that he was subjected to unlawful interrogation.  The government disputes all these claims and will  address each in turn as follows:

Lack of Probable Cause

Whitfill claims that the affidavit in support of the search warrant is based on speculation and suspicion and fails to set forth sufficient factual information to establish probable cause to believe that a crime was committed.  The government contends that the information in the

1

affidavit clearly shows probable cause to believe that the crimes of conspiracy to distribute marijuana and conspiracy to engage in money laundering have been committed.  The affidavit shows that Whitfill's coconspirators Christopher Mattingly and Ronald Shewmaker were complicit in the attempted payment of $430,000 in cash to a California drug dealer, which was seized by police on 5 May 2014 in California.  The affidavit also describes another California seizure on 6 November 2014 of $237,000 in cash that came directly from Mattingly's farm, which Whitfill managed, as well as the seizure in Hardinsburg, Kentucky of  $60,000 in cash on 11 November 2014 involving a vehicle from Mattingly's Hardinsburg car lot, where Whitfill worked.  Each of these attempted financial transactions constitutes strong evidence of the crimes of money laundering and drug trafficking.

In addition to the cash seizures, the affidavit describes recorded wiretap conversations between Mattingly and Whitfill related to drug trafficking.  On 17 March 2015 they talk about a "pickup" to occur in a couple of days.  On 18 March 2015 they again talk about the impending pickup and how the driver had been forced to pay officers at Mexican checkpoints several thousand dollars, presumably as bribes to overlook illegal activity.  When Whitfill asked Mattingly how much to pay the man coming for the pickup, he was told to give him $30,000. This too is evidence of conspiracy to engage in money laundering and drug trafficking.

The affidavit states that a confidential informant has seen drug transactions on Mattingly's farm, which Whitfill manages, and the proceeds of drug transactions on Whitfill's property.  The affidavit does not give a specific date for these observations, but it is clear in context that the observations were made between 5 May 2014 and 17 March 2015.  The affidavit shows that Whitfill and Mattingly are closely connected.  Whitfill not only manages Mattingly's farm but also works at his car lot, and they work together to raise and fight gamecocks.

The affidavit concludes by stating that the investigation shows there is no indication that the drug transactions and money laundering on the properties of Mattingly and Whitfill have stopped.   Read in its entirety, the affidavit clearly shows probable cause to believe that crimes have been committed, specifically conspiracy to distribute marijuana and conspiracy to engage in money laundering.

Warrant affidavits are entitled to deferential review, which is appropriate to further the Fourth Amendment's strong preference for searches to be conducted pursuant to a warrant. Massachusetts v. Upton, 466 U.S. 727 (1984).  The decision by a judge to issue a search warrant should be reversed only if the judge "arbitrarily exercised his or her authority."  United States v. Brown, 715 F.3d 985, 988 (6th Cir. 2013).  Whitfill fails to show any evidence of arbitrariness by the state court judge who issued the search warrant.

Nexus

Whitfill argues that there are insufficient facts set forth in the affidavit from which the issuing magistrate could determine a nexus between the place to be searched and the items to be seized.  This argument is similar to the probable cause argument addressed above, and fails for the same reasons.  A judge may find probable cause to issue a search warrant when there is a "fair probability that contraband or evidence of crime will be found at a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).  To make this determination, the judge must make a "practical, common sense evaluation of all the circumstances set forth in the affidavit before him."  Id.  The affidavit must state a nexus between the place to be searched and the evidence sought, but the nexus is established when there is a "fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." United States v. Greene, 250 F.3d 471, 479 (6th Cir. 2001).  In reviewing the totality of the

3

circumstances, the court may give "considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and the type of offense." United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996). The officer affiant's belief that the items sought will be found at the location to be searched may be supported by "less than prima facie proof, but more than mere suspicion." United States v. Johnson, 351 F.3d 254, 258 (6th Cir. 2003). It is well established in the Sixth Circuit that an issuing judge may infer that drug traffickers use their homes to store drugs and further their drug trafficking activities. United States v. Miggins, 302 F.3d 384, 393 (6th Cir. 2002); United States v. Newton, 389 F.3d 631, 636 (6th Cir. 2004); United States v. Williams, 544 F.3d 683, 688 (6th Cir. 2008).

### Staleness

Whitfill claims that the information in the affidavit connecting him to alleged crimes had become stale, but the affidavit describes pertinent conversations between Mattingly and Whitfill that occurred only a couple of days before the search. Moreover, the affidavit clearly describes ongoing criminal activity, which always defeats a claim of staleness. United States v. Greene, 250 F.3d 471 (6th Cir. 2001); United States v. Canan, 48 F.3d 954 (6th Cir. 1995).

### Unlawful Wiretaps

Whitfill claims that the information about him came from an unlawful wiretap. Some of the information in the affidavit came from wiretaps approved by a state court judge in Riverside, California, but those wiretaps have not been held to be unlawful. Indeed, the only ones that have been the subject of judicial review have been upheld. (DN 102).

<u>Unlawful Detention and Interrogation</u>

Whitfill claims that officers executing the search warrant unlawfully seized him, searched his person, and interrogated him.  The United States denies this claim.  He was detained, but the police are authorized to detain the occupants of a place being searched.  <u>Michigan v. Summers</u>, 452 U.S. 692 (1981).  They also are authorized to frisk and restrain with handcuffs persons so detained.  <u>Muehler v. Mena</u>, 544 U.S. 93 (2005);  <u>United States v. Bohannon</u>, 225 F.3d 615 (6th Cir. 2000).  The government denies Whitfill's claim that he was interrogated without first being advised of his rights.

<u>Good Faith</u>

The United States asserts that the officers acted in reasonable good faith reliance on a search warrant issued by a neutral magistrate.  Even if the court should find that the judge who issued the search warrant was mistaken in concluding that probable cause existed, the exclusionary rule does not apply so long as (1) the judge did not abandon his neutral role, (2) the affiant was not dishonest or reckless in preparing the affidavit, and (3) there is sufficient indicia of probable cause to permit a reasonable belief in its existence.  <u>United States v. Leon</u>, 486 U.S. 897 (1984).  All these conditions are present in the instant case.

<u>Conclusion</u>

For all the foregoing reasons, the motion to suppress the evidence seized pursuant to the search warrant should be denied, but an evidentiary hearing will be necessary for the United States to prove that officers did not violate Whitfill's constitutional rights during the execution of the search warrant and that statements he made to the officers at that time were voluntary.

Respectfully submitted,

JOHN E. KUHN, JR.
UNITED STATES ATTORNEY

/s/ Larry Fentress
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-6772

<u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing response was filed electronically on July 8, 2016, to be served through the CM/ECF system on **Patrick Renn** and counsel for the other defendants.

/s/ Larry Fentress
Assistant United States Attorney